UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
WARREN TAYLOR and GREILY DIAZ,

                Plaintiffs,

   -against-                           **MEMORANDUM**
                                         Case No. 08-CV-3264 (FB) (RML)

ABERCROMBIE & FITCH STORES, INC.,
a/k/a Abercrombie and Fitch,

                Defendant.
----------------------------------------------------------x

*Appearances:*
*For the Plaintiffs:*
ROBERT A. BURSTEIN, ESQ.
286 Madison Avenue, Suite 1802
New York, NY 10017

DAVID ABRAMS, ESQ.
299 Broadway, Suite 1700
New York, NY 10007

*For the Defendants:*
MARK A. KNUEVE, ESQ.
Vorys, Sater, Seymour and Pease, LLP
52 East Gay Street
Columbus, OH 43216

ASHLEY M. MANFULL, ESQ.
Vorys, Sater, Seymour and Pease, LLP
106 South Main Street, Suite 1100
Akron, OH 44308

JOHN S. HO, ESQ.
HOWARD MILLER, ESQ.
Bond, Schoeneck & King, PLLC
330 Madison Avenue, 39th Floor
New York, NY 10017

**BLOCK, Senior District Judge:**

        On September 30, 2010, the Court issued an electronic order granting the motions for summary judgment filed by defendant Abercrombie & Fitch Stores, Inc. ("A&F"). The following is a memorandum of the Court's reasons for that order.

I

Plaintiffs, Warren Taylor and Greily Diaz, are former employees of A&F. Warren is black, while Diaz describes herself as "a dark-skinned Hispanic." Diaz Decl. ¶ 4. Both worked as "Overnight Managers."

Plaintiffs allege that they were denied transfers to daytime positions based on their race and/or color. In addition, Taylor claims that he was fired in retaliation for complaining about discrimination.[1] The factual underpinnings of these claims are set forth as necessary in the body of this Memorandum. They sue under 42 U.S.C. § 1981 ("§ 1981"), Title VII of the Civil Rights Acts of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

II

All of plaintiffs' discrimination claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (§ 1981 and Title VII); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (NYSHRL and NYCHRL). The Second Circuit has summarized that framework as follows:

> [T]he plaintiff bears the initial burden of establishing a prima facie case of discrimination. . . . If the plaintiff does so, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action . . . . If such a reason is provided, plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by

---

[1] Diaz left A&F for a higher-paying job, and does not claim discrimination or retaliation in connection with the voluntary termination of her employment.

2

showing, without the benefit of the presumption, that the employer's determination was in fact the result of . . . discrimination.

*Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008) (citations and internal quotation marks omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

## A. *Prima Facie* Case

To make out a *prima facie* case of employment discrimination, a plaintiff must show that "1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). The fourth element is dispositive in this case.[2]

Plaintiffs argued that they had satisfied the fourth element for two reasons:

---

[2] As a result, the Court need not resolve the not uninteresting issue of whether the denial of an otherwise lateral transfer from a nighttime to daytime shift qualifies as an adverse employment action. *Compare Beyer v. County of Nassau*, 524 F.3d 160, 165 (2d Cir. 2008) ("A denial of a transfer may constitute an adverse employment action [when] a plaintiff adduces sufficient evidence to permit a reasonable factfinder to conclude that the sought for position is materially more advantageous than the employee's current position, whether because of prestige, modernity, training opportunity, job security, *or some other objective indicator of desirability*." (emphasis added)), *with id.* at 164 ("[S]ubjective, personal disappointment is not enough." (citation, internal quotation marks and alteration omitted)).

3

- Taylor was told by his immediate supervisor that he should not bother to apply for a daytime position because he "did not have the look." Taylor Decl. ¶ 9. Diaz's supervisor told her that she "would never be hired for a daytime position even if [she] quit and re-applied." Diaz Decl. ¶ 5.

- Both plaintiffs averred that "essentially" all overnight managers were non-white, while "essentially" all daytime managers were white, "very light skinned" or had "little or no customer contact." Taylor Decl. ¶¶ 7-8, 12-13; *see also* Diaz Decl. ¶¶ 6-7.

As discussed at oral argument, however, these factors – even if considered together – do not give rise to an inference of discrimination.

With respect to the supervisors' comments, the Court accepts that at least the statement that Taylor lacked "the look" could reasonably be interpreted as a reference to race or skin tone. The statement of Diaz's supervisor, by contrast, bears no indicia of discriminatory animus.

In any event, both plaintiffs conceded that their supervisors did not have the authority to grant or deny transfers to the daytime shift; it is undisputed that such decisions were made by senior managers responsible for the daytime shift. Statements made by non-decisionmakers do not give rise to an inference of discrimination. *See, e.g., Del Franco v. New York City Off-Track Betting Corp.*, 429 F. Supp. 2d 529, 536-37 (E.D.N.Y. 2006) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).

With respect to the racial makeup of the day and night shifts, plaintiffs did not specify what they meant by "essentially." Nor did they explain what constituted "light-skinned" versus "dark-skinned." Such vague, conclusory assertions are insufficent to defeat summary judgment. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations

4

of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").

In sum, while the Court is confident that a workforce segregated into "light-skinned" and "dark-skinned" contingents would violate the discrimination laws, *see* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination based on "race, *color*, religion, sex, or national origin" (emphasis added)), plaintiffs in this case have, as an evidentiary matter, failed to raise any inference that A&F engaged in such a practice.

## B. Legitimate, Nondiscriminatory Reason and Pretext

Assuming *arguendo* that plaintiffs had made out a *prima facie* case, A&F satisfied its burden of offering a legitimate, nondiscriminatory reason – namely, that neither plaintiff ever applied for a transfer to the day shift.[3] Thus, it becomes plaintiffs' burden to show that that reason was a pretext for discrimination.

In that regard, the Supreme Court has held that "a reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (internal quotations omitted). Nevertheless, "[p]roof that the defendant's explanation is

---

[3]In failure-to-promote cases, the second element of the *prima facie* case is often described as requiring the plaintiff to show that "he applied for promotion to a position for which he was qualified." *Mauro v. Southern New England Telecomm., Inc.*, 208 F.3d 384, 386 (2d Cir. 2000) (citing *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998)). In failure-to-transfer cases, however, there may not be a specific, posted position; that appears to be the case here. Therefore, the Court considers it more appropriate to address plaintiffs' failure to apply as a legitimate, nondiscriminatory reason, rather than as an element of their *prima facie* case. *Cf. id.* at 387 (excusing plaintiff from that aspect of *prima facie* case because employer did not post specific promotion opportunities).

5

unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves*, 530 U.S. at 147. The Second Circuit has held that "the Supreme Court's decision in *Reeves* clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (quoting *Reeves*, 530 U.S. at 143).

Plaintiffs concede that they never applied for transfers to the day shift. Nor do they dispute that such applications were required. Instead, they contend that their immediate supervisors discouraged them from applying, and that A&F should be held liable for that discouragement. The Court rejects that contention.

As noted, transfers to the day shift were approved or rejected by daytime managers; plaintiffs' immediate supervisors had no role in the decision. Their discouraging comments, therefore, can be taken only as expressions of their own opinions, not the opinions of the decisionmakers. It would be unreasonable to attribute an illicit motive to A&F based upon vague (and possibly unfounded) opinions, without at least giving its decisionmakers an opportunity to act on an actual application.

The Second Circuit reached essentially the same conclusion in *Brown v. Coach Stores. Inc.*, 163 F.3d 706 (2d Cir. 1998). There, the plaintiff argued that she should be excused from the application requirement, albeit for different reasons than those advanced here. The circuit court rejected the argument, noting that the plaintiff had not claimed

"that [her employer] refused to accept applications for positions or hand-picked individuals for promotion to a position without considering applicants." *Id.* at 710.

Although *Brown* may not be, strictly speaking, controlling here, its reasoning is fully applicable. Because they never applied for a transfer, plaintiffs are unable to show that such applications would have been – as their supervisors claimed – futile. Therefore, they are unable to show that A&F stated reason for not transferring them was even false, let alone a pretext for unlawful discrimination.

### III

Taylor's retaliation claim is subject to the same *McDonnell Douglas* burden-shifting framework applicable to discrimination claims. *See Terry v. Ashcroft*, 336 F.3d 128, 140-41 (2d Cir. 2003). The only difference lies in the elements of the *prima facie* case; to establish a *prima facie* case of retaliation, the plaintiff must demonstrate that (1) he engaged in a statutorily protected activity; (2) his employer was aware of this activity; (3) he suffered an adverse employment action; and (4) there is a "causal connection" between the protected activity and the adverse employment action. *See Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006).

Taylor offered undisputed evidence that he was terminated on December 1, 2007, approximately two month after filing complaints with the Equal Employment Opportunity Commission and the New York State Division of Human Rights. Since A&F does not dispute that it was aware of those complaints, Taylor has made out a *prima facie* case of retaliation. *Cf., e.g., Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998)

7

(*prima facie* case established where plaintiff's termination "came less than two months after she filed a complaint with [defendant's] management").

A&F contends, however, that Taylor was fired after a November 25, 2007 altercation with Tanisha Williams, a trainee employee. Although Taylor disputes some of the details of the incident, he admits that he called Williams a "bitch." In addition, he does not dispute that this violated A&F's employee conduct policy, which prohibited unprofessional language.

Instead, he argues that A&F disciplined him more harshly than other employees engaged in similar conduct. In that regard, he offered evidence of three incidents that involved physical or verbal confrontations between one employee and another, but that did not result in any terminations.

In order for the Court to draw meaningful comparisons, however, Taylor must show that he was similar to his proposed comparators "in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). A&F represented – and Taylor did not dispute – that none of the employees involved in the other confrontations was a manager. The Court agrees that this is a material distinction, inasmuch as A&F could reasonably be expected to hold its managers to a higher standard of conduct. *Cf. Senske v. Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009) ("[Defendant] was entitled to hold lower-ranking employees to lower standards than those it applied to [plaintiff]."). As a result, Taylor failed to offer sufficient evidence to show that the November 25th incident was a pretext for unlawful retaliation.

8

## IV

Defendant's motions for summary judgment are granted. Plaintiffs' complaint is dismissed in its entirety.

**SO ORDERED.**

s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, NY
October 18, 2010